# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PNC BANK, National Association,
successor by merger to National City Bank,
a national banking association,

        Plaintiff,

                                   Civil Case No. 16-cv-13258
v.                                      Honorable Linda V. Parker

LEGAL ADVOCACY, P.C., a Michigan
Professional Corporation, f/k/a
NORMAN YATOOMA & ASSOCIATES, P.C.
and NORMAN YATOOMA,

        Defendants.

_____/

## OPINION AND ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 63] AND (2) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 64]

On September 9, 2016, Plaintiff PNC Bank brought this action against

Defendant Legal Advocacy, P.C., f/k/a Norman Yatooma & Associates, P.C. and

Defendant Norman A. Yatooma, alleging breach of promissory note and breach of

guaranty.  (Compl., ECF No. 1.)  Presently before the Court are Plaintiff's and

Defendants' (collectively "Parties") cross-motions for summary judgment, both

filed on March 15, 2019.  (ECF Nos. 63 & 64.)  The motions have been fully

1

briefed.   Finding the facts and legal arguments sufficiently presented in the

Parties' briefs, the Court dispensed with oral argument pursuant to Eastern District

of Michigan Local Rule 7.1(f).   For the reasons that follow, the Court grants

Plaintiff's motion, (Pl.'s Mot., ECF No. 63), and denies Defendants' motion,

(Defs.' Mot., ECF No. 64).

## FACTUAL BACKGROUND

On August 27, 2008, Plaintiff extended credit to Defendant Legal Advocacy

in the amount of $1,500,000, which was executed by a Promissory Note ("Note")

and secured with a Commercial Guaranty.   (Pl.'s Mot., ECF Nos. 63-2, 63-4, 63-

5.)   Defendant Yatooma executed the Commercial Guaranty and agreed to be

financially responsible for the indebtedness of Defendant Legal Advocacy.   (Pl.'s

Mot., ECF No. 63-4.)   The Note provided that payment would be due upon

demand.   (Pl.'s Mot., ECF No. 63-2 at Pg. ID 720.)

In early 2010, Plaintiff asked Defendants to sign new commercial loan

documents and submit past due financial reports by March 15, 2010.   (Pl.'s Mot.,

ECF No. 63-7 at Pg. ID 763.)   Defendants did not do so.   (*Id.*)   On March 24,

2010, Plaintiff noted in its internal database that Defendants "defaulted" on their

loan.   (Defs.' Mot., ECF No. 64-5; Defs.' Resp., ECF No. 68 at Pg. ID 1068.)

On April 30, 2010, Plaintiff sent Defendants a demand letter ("Demand

Letter #1).   (Pl.'s Mot., ECF No. 63-7 at Pg. ID 763.)   The letter sought full payment of the debt by no later than June 30, 2010.   (*Id*.)   Having received no payment by that date, on July 8, 2010, Plaintiff sent Defendants a second demand letter but to no avail.   (Defs.' Mot., ECF No. 64-8.)   From July 2010 to October 2010, the Parties exchanged several emails and letters regarding the loan account. (Defs.' Mot., ECF Nos. 64-9, 64-10, 64-11, 64-12, 64-13, 64-14, 64-15.)

However, from September 2008—the month after the loan's inception— through October 2010, Defendants consistently and timely made "interest-only" payments.   (Pl.'s Mot., ECF No. 63-6.)   These "interest-only" payments include a $3,550.37 payment on September 27, 2010 (the same day as the "bill due" date) and a $3,435.85 payment on October 26, 2010 (one day before the "bill due" date). (*Id*. at Pg. ID 756; Pl.'s Mot., ECF Nos. 63-8, 63-9.)

## PROCEDURAL HISTORY

On September 9, 2016, Plaintiff brought this action, alleging breach of promissory note and breach of guaranty.

In response, Defendants filed a motion for summary judgment, claiming Plaintiff's claims are barred by the six-year statute of limitations.   (Defs.' Mot., ECF No. 18 at Pg. ID 166.)   Plaintiff filed a cross-motion for summary judgment, arguing that the claims were not time-barred.   (Pl.'s Reply, ECF No. 23 at 359.)

The Court denied both motions on December 12, 2017, finding them premature. (Order, ECF No. 24.) The Court noted that the Parties had not yet engaged in discovery, which may reveal whether the September 27, 2010 and October 26, 2010 "interest-only" payments revived the statute of limitations. (*Id.* at Pg. ID 372-73.) The Court provided the same reasoning in response to Plaintiff's motion for reconsideration. (Pl.'s Recons. Mot., ECF No. 33; Order, ECF No. 43.)

On March 15, 2019, following discovery, the Parties again filed cross-motions for summary judgment, proffering substantially the same arguments in their respective briefs. (ECF Nos. 63 & 64.)

## SUMMARY JUDGMENT STANDARD

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden

4

of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a reasonable jury could find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## APPLICABLE LAW & ANALYSIS

### Count I: Breach of Promissory Note

Under Michigan law, the statute of limitations for a breach of contract claim is six years. *See* Mich. Comp. Laws § 600.5807(9). However, a partial payment on a loan will restart the running of the limitations period. *See Yeiter v. Knights of St. Casimir Aid Soc'y*, 607 N.W.2d 68, 70 (Mich. 2000) (citations omitted) ("A partial payment made on a debt after the debt matures serves to revive the statute of limitations. A new cause of action accrues on the date of payment."); *Buchanan v. Northland Grp.*, 776 F.3d 393, 396 (6th Cir. 2015) (citation omitted) (partial payments on time-barred debt restarts statute of limitations under Michigan law); *Fed. Deposit Ins. Corp. v. Garbutt*, 370 N.W.2d 387, 390 (Mich. Ct. App. 1985) (citations omitted) ("[I]f a partial payment is made on a note after it matures, a cause of action accrues as of the time of the partial payment.").

However, the partial payment must be "accompanied by a declaration or circumstance that rebuts the implication that the debtor by partial payment admits the full obligation." *Yeiter*, 607 N.W.2d at 71; *see also Charbonneau v. Mary Jane Elliott, P.C.*, 611 F. Supp. 2d 736, 741 (E.D. Mich. 2009) (citation omitted). This is because "[p]artial payment [on a debt] is equivalent to a new promise, and operates as an acknowledgment of the continued existence of the demand and as a

6

waiver of any right to take advantage by plea of limitations of any such lapse of time as may have occurred previous to the payment being made." *Yeiter*, 607 N.W.2d at 71 n.6 (citation omitted).

Defendants argue Plaintiff's suit is barred by the six-year statute of limitations, which began to accrue on either April 30, 2010, the date of Demand Letter #1, or June 30, 2010, the date payment was expected per that demand letter. (Defs.' Mot., ECF No. 64 at Pg. ID 831.)  Defendants contend that they made the September 27, 2010 and October 26, 2010 "interest-only" payments for the sole purpose of advancing settlement negotiations.  (*Id*. at Pg. ID 832-34.)

Plaintiff responds that no declaration or circumstance rebutting the implication that Defendants admitted the full obligation accompanied the two "interest-only" payments.  (Pl.'s Mot., ECF No. 63 at Pg. ID 691.)  Thus, the two payments constituted new promises to pay and the September 9, 2016 Complaint was filed within the six-year statute of limitations that ran anew beginning on each of the two days.  (*Id*. at Pg. ID 703.)

Notably, the focus of this analysis is the *debtor*, who supplies the partial payment—not the creditor, or his intent or understanding when receiving it.[1]  *See*

---

1 For this reason, arguments that point to *Plaintiff's* intent or understanding at the time of the two "interest-only" payments do not impact the analysis and thus fail at the outset.  These inapplicable arguments include:  (i) Plaintiff, in its internal database, relabeled Defendants' loan

*Yeiter*, 607 N.W.2d at 71 n.7 (partial payment paid by debtor "must be accompanied by . . . indication of an intention to pay").    After a careful review of the record, the Court agrees with Plaintiff.

<em>No Declaration or Qualification Rebutting Financial Obligation</em>

The record is clear:   Defendants' failed to make the requisite declaration or qualification at the time of the September 27, 2010 and October 26, 2010 "interest-only" payments.

Defendants argue that, at the time of the September 27, 2010 partial payment, "[Plaintiff] was well aware that settlement discussions were ongoing and that these payments were not being made on an open account."   (Defs.' Resp., ECF No. 68 at Pg. ID 1071.)    This argument fails.   As previously mentioned, what Plaintiff was aware of or what Plaintiff understood plays no role in answering the question at hand.   Notably, Defendants do not point to any case law in which a court has found that a plaintiff's subjective understanding of the parties' mutual intent at the time of a partial payment satisfies the requisite declaration or qualification to be made by a defendant.   Indeed, even if Plaintiff subjectively

---

from "performing" to "non-performing" or in default; (ii) Plaintiff, after threatening to litigate, began discussing alternative resolutions; and (iii) a particular member of Plaintiff's staff never before encountered a debtor who made payments after a demand for payment in full. (Defs.' Resp., ECF No. 68 at Pg. ID 1056, 1068.)

8

understood that settlement discussions were ongoing, Defendants' two "interest-only" payments could have led Plaintiff to believe—at the moment that each of those two payments were made—that settlement discussions were no longer to continue and Defendants manifested a new commitment to pay the full obligation, only to have Defendants change their minds and restart settlement discussions. "To allow this would be to permit chaos in the legal and business world": the antithesis of the public policy underlying the requirement that partial payments be accompanied by a declaration or circumstance rebutting the implication of a promise to pay. *Yeiter*, 607 N.W.2d at 71 n.7 (quoting *Bonga v. Bloomer*, 165 N.W.2d 487, 489 (Mich. App. Ct. 1968)) ("If this were not true, it would be possible for one to make a partial payment and intend to pay the balance at a later date, but in the interim, change his mind and effectively renege.").

Defendants further argue that since "[settlement] communications were constant in both September and October 2010, they clearly constitute declarations of the manner in which these payments were being made. If the Court needs to anchor to a specific document, the October 6, 2010 email makes clear the nature of the payments . . . ." (Defs.' Resp., ECF No. 68 at Pg. ID 1081.) To the contrary, the October 6 email does not state or make clear that Defendants were not admitting the full obligation. (Defs.' Resp., ECF No. 68-13.) Moreover,

Defendants did not send this email *at the time of either partial payment*, as required by Michigan law. *See Yeiter*, 607 N.W.2d at 71 n.7 (quoting *Bonga*, 165 N.W.2d at 489 (disallowing attempts to qualify a partial payment two months after the unqualified payment)).

Defendants also contend that, at the time of the October 26, 2016 "interest-only" payment, Plaintiff had not requested a tolling agreement. (Defs.' Mot., ECF No. 64 at Pg. ID 825.) But Defendants point to no case law requiring Plaintiff to take such affirmative action. Ultimately, the record lacks any declaration or qualification accompanied by the two "interest-only" payments.

### No Circumstance Rebutting Financial Obligation

No reasonable jury could find a circumstance rebutting the implication that Defendants admitted the full obligation at the time of the "interest-only" payments.

First, Plaintiff presented evidence in the form of a "Note Recap," identifying all of the "interest-only" payments Defendants made since the inception of the loan. (Pl.'s Mot., ECF No. 63-6.) These payments, which with few exceptions matched the exact amount noted on the "bill due" date, were made on the day or within a day of the respective "bill due" dates. (*Id.*) The two payments at issue happened to be Defendants' last two "interest-only" payments. (*Id.* at Pg. ID 756.) Notably, Defendants do not dispute the accuracy of the Note Recap.

10

Instead, they argue that they made the two payments in the middle of settlement discussions.   But this argument, which the Court already determined is unpersuasive, does not explain away the fact the two "interest-only" payments were no different than the "interest-only" payments Defendants previously made like clockwork—payments that correspond with reductions in the amount owed on the Note.   (*Id.*); *see also Smith v. Jim Madden & Assocs., Inc.*, (No. 19-5061), 1997 WL 33344679, at *3 (Mich. Ct. App Jul. 11, 1997) (unpublished) (noting that the partial payment that revived the statute of limitations appeared as the last entry on the general ledger maintained by plaintiff).

In fact, Defendant Yatooma concedes that the "interest-only" payments were indeed payments on the financial obligation required by the Note.   (Pl.'s Mot., ECF No. 63-3 at Pg. ID 731-32.)   When asked by Plaintiff's counsel if he admits that at the time of the "interest-only" payments he "owed the money," Defendant Yatooma answered affirmatively and further stated:   "Again, I don't dispute then or now [that] . . . the loan document required me to make those payments and I was making those payments even when the bank defaulted me . . . .   I was doing what the document said.   I was honoring the agreement.   I was making those payments every month."   (*Id.* at Pg. ID 732.)   No reasonable jury could find that this circumstance—in which Defendants state that the Note "required" the two

11

"interest-only" payments—shows any intention contrary to making a payment on a financial obligation Defendants understood they held.

Second, no reasonable jury could find persuasive Defendants' argument that they were told that "settlement discussions could not be had if [they] refused payment, so [they] made payments in hopes to continue discussions." (*Id.* at Pg. ID 731.) There is no evidence on the record suggesting that Plaintiff made such a statement. Even if true, Defendants offer no case law supporting the argument that when defendants face a choice of two evils—such as, cease payments and thus settlement discussions, or the inverse—the decision to choose one over the other renders the choice involuntary. *See Hiscock v. Hiscock*, 240 N.W. 50, 53 (Mich. 1932) (finding that a "voluntary and unqualified payment" is "the best evidence" that defendant intends to waive his legal rights and "perform his moral obligation to pay the whole of the just debt"). Indeed, in even less discretionary circumstances and circumstances concerning liberty interests, Michigan courts have still found partial payments waived the statute of limitations defense. *See Wayne Cty. Soc. Servs. Dir. ex rel. Yates v. Yates*, 681 N.W.2d 5, 8 (Mich. Ct. App. 2004) (finding partial payment waived statute of limitations defense even though made pursuant to income withholding order); *Alpena Friend of the Court ex rel. Paul v. Durecki*, 491 N.W.2d 864, 865-66 (Mich Ct. App. 1992) (finding partial

12

payment waived statute of limitations defense even though made to avoid being held in contempt of court and to avoid jail sentence).

For the reasons outlined above, this Court finds that there is no genuine issue of material fact regarding whether the September 27, 2010 and October 26, 2010 "interest-only" payments constituted unqualified partial payments on the Note and therefore renewed the statute of limitations. The statute of limitations did not expire until October 26, 2016 and thus the September 9, 2016 action is not time-barred. The Court grants Plaintiff's motion and denies Defendants' motion as to Count I.

### Count II: Breach of Guaranty

It is undisputed that the Commercial Guaranty states:

> Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of . . . (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding indebtedness which is not barred by any applicable statute of limitations . . . .

(Pl.'s Mot., ECF No. 63-4 at Pg. ID 742.)

Because the Court finds that the six-year statute of limitations does not bar the claim under Count I, "there is outstanding indebtedness which is not barred by an[] applicable statute of limitations." The clear and unambiguous language of

13

the contract prevails:   Defendant Yatooma waived the statute of limitations defense.   Since no genuine issue of material fact remains, the Court grants Plaintiff's motion and denies Defendants' motion as to Count II.

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion and denies Defendants' motion as to both counts.   Defendants do not contest the validity of the underlying agreement.   The Court, therefore, awards Plaintiff the accrued principal, unpaid interest, late charges, and reasonable collection costs and attorneys' fees in seeking recovery as agreed to in the Note.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for summary judgment (ECF No. 63) is **GRANTED** and Defendants' motion for summary judgment (ECF No. 64) is **DENIED**.

**IT IS FURTHER ORDERED** that counsel for the Parties will meet and confer to determine whether they can agree on the amount owed to Plaintiff for the accrued principal, unpaid interest, late charges, and reasonable collection costs and attorneys' fees in seeking recovery.   Within **21 days** of this Opinion and Order, counsel shall either (i) prepare and submit a stipulated proposed judgment, if there are no disputes as to the amount of the judgment to be entered by the Court, or (ii)

14

inform the Court in writing, if there are disputes.   If no agreement is reached, the

Court will schedule a status conference with counsel to decide how to proceed.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 30, 2019

15