UNITED STATED DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN-SOUTHERN DIVISION

PNC Bank, National Association,
successor by merger to National City Bank,
a national banking association,

        Plaintiff,

vs

        Case No. 2:16-cv-13258-LVP-DRG
        Hon. Linda V. Parker
        Magistrate Judge David R. Grand

LEGAL ADVOCACY, P.C., a Michigan
professional corporation, f/k/a
NORMAN YATOOMA & ASSOCIATES, P.C.,
and NORMAN A. YATOOMA,
jointly and severally,

        Defendants.
_____

**MOTION OF PNC BANK, NATIONAL ASSOCIATION
FOR APPOINTMENT OF RECEIVER**

Plaintiff, PNC Bank, National Association ("PNC"), a national banking association, by its attorneys, Plunkett Cooney, moves this Honorable Court for the entry of an order appointing a receiver for assets of judgment debtor, attorney Norman A. Yatooma ("Yatooma"), in accordance with Fed. R. Civ. P. 66 and 69(a)(1), MCR 2.621(A)(2) and (E), and M.C.L. §600.4031, for the reasons stated in the accompanying brief in support.

Concurrence in the relief requested was sought and not obtained.

Plunkett Cooney

By:  /s/DOUGLAS C. BERNSTEIN
Douglas C. Bernstein (P33833)
Patrick Lannen (P73031)
Attorneys for Plaintiff
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
(248) 901-4000
dbernstein@plunkettcooney.com
plannen@plunkettcooney.com

Dated: February 11, 2022

UNITED STATED DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN-SOUTHERN DIVISION

PNC Bank, National Association,
successor by merger to National City Bank,
a national banking association,

       Plaintiff,

vs                                   Case No. 2:16-cv-13258-LVP-DRG
                                          Hon. Linda V. Parker
                                          Magistrate Judge David R. Grand

LEGAL ADVOCACY, P.C., a Michigan
professional corporation, f/k/a
NORMAN YATOOMA & ASSOCIATES, P.C.,
and NORMAN A. YATOOMA,
jointly and severally,

       Defendants.
_____

**BRIEF OF PNC BANK, NATIONAL ASSOCIATION IN SUPPORT OF MOTION
FOR APPOINTMENT OF RECEIVER**

## STATEMENT OF QUESTION PRESENTED

I.     Yatooma individually owes PNC Bank, National Association ("<u>PNC</u>") more than $2 Million on a Judgment granted by this Court and unanimously affirmed by the Sixth Circuit. To thwart collection, after summary judgment was granted, Yatooma incorporated a new law firm, put the old law firm into bankruptcy twice, but only after paying himself more than $9 Million from the old law firm without telling PNC any money was available to satisfy the Judgment, and then invested in the marijuana business specifically to avoid PNC, among other actions. Should the Court appoint a receiver to locate nonexempt assets of Yatooma available to satisfy Judgment?

PNC answers: "yes."

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 66

Fed. R. Civ. P. 69(a)(1)

MCR 2.621(A)(2) and (E)

M.C.L. §600.4031

*Santibanez v Wier McMahon & Co.*, 105 F.3d 234, 241 (5th Cir. 1997)

## **Introduction**

PNC seeks the appointment of a receiver for the purpose of discovering, preserving and liquidating the nonexempt assets of Yatooma to satisfy its Judgment that has an outstanding balance of over $2,000,000.00. As demonstrated below, the appointment of a receiver is necessary and warranted under the law because of Yatooma's actions orchestrated to avoid payment.

Absent the appointment of a receiver with the authority to identify, take possession and control of, and liquidate Yatooma's nonexempt assets to satisfy the Judgment, PNC will be (i) unable to identify, locate and recover assets that were subject to its lien that were wrongfully diverted, and (ii) locate remaining assets that should be used to satisfy the Judgment based on its basic rights under Judgment execution law. Accordingly, a receiver should be appointed with the customary powers necessary for the satisfaction of the Judgment, the prevention of any further dissipation of available assets, and the authority to bring such actions as shall be necessary to set aside fraudulent conveyances which had the effect of denying PNC access to the monies to which it was and is entitled.

## Statement of Facts

### A. Procedural Background.

PNC filed this collection action on September 9, 2016, arising out of the breach by Yatooma's law firm, Legal Advocacy, P.C. d/b/a Norman Yatooma & Associates ("NYA") of a promissory note in the original principal sum of $1,500,000.00, and by Yatooma of his personal guarantee of repayment, each of which were signed in favor of PNC's predecessor, National City Bank, in 2008.  The last voluntary payment made for application to the outstanding balance was made in 2010.

As collateral for the repayment of the obligation, NYA granted a security interest in and upon all of its assets, including but not limited to its accounts receivable and the proceeds thereof.

On September 30, 2019, this Honorable Court entered an opinion and order granting PNC's motion for summary judgment and denying Defendants' motion for summary judgment (the "Summary Judgment Order") [ECF No. 74], and on October 23, 2019, this Honorable Court denied Defendants' motion for reconsideration.  ECF No. 80.

Thereafter, on February 11, 2020, this Honorable Court entered judgment in favor of PNC and against Yatooma and NYA, jointly and severally, in the sum of $2,141,524.68 (the "Judgment").  ECF No. 86.  On December 16,

2020, the United States Court of Appeals for the Sixth Circuit affirmed this Court's entry of the Summary Judgment Order and the Judgment.  ECF Nos. 211 and 212. Sixth Circuit Case No. 19-2381, ECF No. 46-2.

PNC, through counsel, at least as far back as May 6, 2021, made numerous requests for dates upon which a creditor's examination of Yatooma could be scheduled, but received none; as a result, PNC was forced to file a motion to compel (ECF No. 213), which was granted by this Court.  ECF No. 217.  PNC, however, did not want to conduct the examination without first reviewing relevant financial documents, which also were requested several times, but admittedly, were not subpoenaed.  Notwithstanding the several requests, the documents were not furnished, and the examination has not been conducted.  Yatooma furnished dates upon which he was willing to appear to testify, but did not offer to provide, nor has he provided, the requested documents.   In fact, in a vain attempt to demonstrate his "compliance" with this Court's Order, on November 24, 2021, one day before Thanksgiving, Yatooma apparently "appeared" for a creditor's examination which had not been noticed by PNC, a farcical proceeding in which PNC did not participate. The "transcript" was submitted as an exhibit in the Michigan Bankruptcy proceedings pending before the Honorable Lisa S. Gretchko described below.  See Bankruptcy Case No. 21-50040-lsg at ECF No. 65-3.

3

As a result, PNC has yet to obtain a complete picture of Yatooma's financial condition and available assets from which the Judgment could be satisfied.  As shown below, Yatooma did not voluntarily pay the Judgment or disclose his more than adequate ability to do so because he has had much to hide. In fact, through searching available public documents, PNC has been able to piece together facts sufficient to demonstrate deliberate acts by Yatooma designed to avoid payment and to shield assets from collection that *easily* could have satisfied the Judgment. Those deliberate acts show that a receiver is warranted here.  The fact that these activities were carried out by a practicing attorney makes the conduct even more egregious.

### B. Incorporation of Second "Yatooma Law Firm" Immediately After Summary Judgment.

Yatooma is the sole shareholder and the president, secretary and treasurer of NYA.  **Exhibit A**. Yet, on October 18, 2019, <u>less than three weeks</u> after the entry of the Summary Judgment Order, Yatooma incorporated a separate law firm, The Yatooma Law Firm, P.C. ("<u>The Yatooma Law Firm</u>"), located at the same address as NYA, and employing the same attorneys as NYA, Yatooma and Christine Constantino, Jr.  **Exhibit B**.  Other than the names of the law firms, the content on each firm's website is virtually identical. [https://normanyatooma.com/](https://normanyatooma.com/); [https://theyatoomalawfirm.com/](https://theyatoomalawfirm.com/).  See

**Exhibits C**, and also **Exhibit D**, showing Yatooma has recently confirmed he is the sole shareholder, president, secretary, and treasurer, of NYA.

PNC has also discovered instances where the same attorneys employed by NYA have appeared in matters, showing that they were employed by The Yatooma Law Firm, using the same physical mailing address as that used by NYA.  See, *e.g., TRBR, Inc. d/b/a Superior Buick GMC, et al. v Americredit Financial Services, Inc. d/b/a GM Financial, et al.,* United States District Court for the Eastern District of Michigan, Case No. 2:20-cv-11269-LJM-APP, filed May 21, 2020; *Whitsett v Whitmer, et al.*, United States District Court for the Eastern District of Michigan, Case No. 2:20-cv-11269-AJT-RSW, filed May 21, 2020; and, *Aspen Specialty Insurance Company v Blankenship, et al.,* United States District Court for the Eastern District of Michigan, Case No. 2:21-cv-10164-GAD-EAS, filed January 25, 2021.  See **Exhibit E**.

Yatooma apparently has lawyers and clients move interchangeably between the two firms, but never did so until immediately after this Court's Summary Judgment Order was entered.  In fact, the appearance filed by Yatooma for The Yatooma Law Firm in the *TRBR, Inc.* matter was filed on January 13, 2022, just two weeks after NYA filed a petition for relief under the Bankruptcy Code, supposedly seeking to reorganize under Chapter 11, which filing is described further below.

5

In addition to the foregoing matters, "The Yatooma Law Firm," not to be confused with the litigant named in this case, was a party in an action brought in the Oakland County Circuit Court, where it was alleged that in March 2021, that firm received a fee for services rendered of $238,787.04.  See **Exhibit F**, Complaint, Oakland County Circuit Court Case No. 2021-188527-CZ at ¶17, referencing the settlement of Case No. 2019-176017-CB.  No reasoning exists why this law firm was used after entry of the Judgment in this case other than to intentionally avoid the Judgment granted to PNC by this Court.

Clearly, but for the formation of The Yatooma Law Firm, those proceeds would have been encumbered by PNC's security interest, and available for the partial satisfaction of the Judgment.

Unfortunately, this is but one of several examples of flagrant conduct which tend to demonstrate that Yatooma has the means, but certainly not the desire, to satisfy the Judgment.

### C. Yatooma's Brother Asserts Yatooma Invested in Cannabis for the Purpose of Avoiding the PNC Judgment.

On May 24, 2021, Value Investors, LLC ("Value Investors"), represented by NYA, filed an action in the Oakland County Circuit Court, Case No. 2021-18865-CK, against Yatooma's brother Jeffery, and Cannabis Property Brokers, LLC, seeking damages of $5,699,696.46, plus costs and other relief (**Exhibit**

6

**G**); in response, a counterclaim was filed, together with a third party

complaint against Yatooma (**Exhibit H**), which alleges the breach of a

settlement agreement and mutual release between Yatooma and his brother

dated January 8, 2021, which is attached to the complaint as Exhibit 1 (the

"<u>Settlement Agreement</u>").  According to the counterclaim at ¶5, Yatooma

controls Value Investors.  The counterclaim further asserts that:

> "... **31.  On information and belief, Norman Yatooma's actions
> and inactions described herein were taken <u>in an attempt to
> avoid collection of a multimillion-dollar judgment against
> Norman Yatooma by PNC </u>Bank and to avoid payment of other
> debts.**
>
> **"32.   <u>Collection activity by PNC Bank with respect to Norman
> Yatooma's interest in the properties identified in the
> Settlement Agreement will further imperil
> Defendants/Counter-Plaintiffs' ability to sell the properties
> and diminish their value</u>** (*emphasis added*)...."

According to the Settlement Agreement, Yatooma and his brother

formed Cannabis Property Brokers, LLC on January 29, 2019 for the purpose

of buying, selling and monetizing real estate for use in Michigan's cannabis

industry (Recital A), and Value Investors invested $6,000,000.00 (Recital B).

A dispute arose, and under the terms of the Settlement Agreement, Jeffery

Yatooma agreed to pay $6,142,196.46 to Value Investors, subject to

adjustments.

The point is: Yatooma "invested" in "properties" to "avoid collection" of PNC's Judgment. Despite the obvious opportunity to do so, Yatooma not only failed to pay PNC a penny, he also failed and refused to disclose any ability to satisfy the Judgment.

It bears noting that Value Investors was incorporated on February 1, 2019, in the midst of the pendency of this lawsuit.  The resident agent was changed on May 29, 2020 from Gavin Fleming to Yatooma personally, using the then address for NYA (showing further interchangeable use by Yatooma of any address which might then be convenient for him), with a further change having been made on October 15, 2021, again to change the registered address.  In each amendment, Yatooma is listed as the member of Value Investors authorizing the change.  Yatooma's interests in these entities were never disclosed to PNC.  See **Exhibit I**.

Unfortunately, the saga demonstrating Yatooma's desire to avoid payment to PNC hardly ends there.

### D. Yatooma Puts NYA into Chapter 11 in California to Avoid PNC Intercepting $400,000 in Oakland County.

*After* PNC obtained entry of the Summary Judgment Order in this Court, NYA obtained a judgment for about $400,000 in the Oakland County Circuit Court, in a matter titled, *Norman Yatooma & Associates, P.C. v. Cohen Lerner &*

*Rabinovitz, P.C., a Michigan Professional Company, and Steven Z. Cohen, individually*, Case No. 2016-153017-CB.  PNC made a claim to the proceeds since they are subject to its blanket security interest, and they were ordered to be held in escrow by the Oakland County Clerk.

On the eve of a hearing to be held in the Oakland County Circuit Court, where PNC sought to have those proceeds paid over (the "Oakland County Motion"), NYA filed a petition for relief under Chapter 11 of the Bankruptcy Code, not in this District, but rather, in the Central District of California on October 18, 2021 (the "California Bankruptcy") [Case No. 2:21-bk-18018].

Despite its attorneys not being licensed in California and all corporate filings with the Michigan Department of Licensing and Regulatory Affairs regarding the entity stating to the contrary, it was falsely asserted in that petition that the "Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district." [Case No. 2:21-bk-18018, ECF No. 1 at ¶12].

At the time of the filing of the California Bankruptcy, NYA's bank accounts were maintained in Michigan.  [Case No. 2:21-bk-18018, ECF No. 11 at p.5, ¶3].

9

In the first meeting of creditors in the California Bankruptcy, Yatooma testified that he is only admitted to practice in the federal courts in the southern district of California, and the NYA attorneys are not otherwise authorized to practice law in California.[1]  See Transcript of 341 Examination, California bankruptcy at pp. 24-28 (**Exhibit J**).  Despite these representations made under oath, according to a national PACER search, the last action filed by Mr. Yatooma in a federal court in California was closed on March 23, 2017. **Exhibit K**.

The California Bankruptcy was dismissed 52 days after it was filed, pursuant to 11 U.S.C. §1112(b), upon the motion of the United States Trustee. At the time the California Bankruptcy was dismissed, PNC also had a motion to dismiss or to transfer venue to the Eastern District of Michigan pending, but it was deemed moot as a result of the relief granted to the United States Trustee.

But rather than simply surrendering the escrowed $400,000 in Oakland to which PNC was clearly entitled, Yatooma again decided to file whatever he

---

[1] Furthermore, Yatooma cannot be admitted to the United States District Court for the Southern District of California.  Admission to the United States District Court for the Southern District of California is limited to attorneys who are active members in good standing of the State Bar of California.  *See* Civil Local Rule 83.3(c)(1)(a) ("**Admission to the Bar of this Court.**  Admission to and continuing membership in the bar of this court is limited to attorneys of good moral character who are active members in good standing of the State Bar of California.").

felt necessary, whether true or not, in order to thwart PNC's efforts to collect on the Judgment.

### E.  Yatooma Puts NYA into a Second Chapter 11, Now in Detroit.

Once the California Bankruptcy was dismissed, PNC renewed the Oakland County Motion, which was scheduled for hearing on January 5, 2022. On December 31, 2021, NYA filed a second petition for relief, this time in the Eastern District of Michigan (the "Michigan Bankruptcy"). [Case No. 21-50040-lsg].

Despite its statement signed under oath in the California Bankruptcy less than ninety days earlier, which asserted that the case was properly filed in the Central District of California, in this petition, NYA swore that "Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district."  [Case No. 21-50040-lsg; ECF No. 1 at ¶11].  These two statements, each made under oath and under penalty of perjury, cannot both be true. They are irreconcilable. Yet both were made. And they were made by NYA on the eve of PNC being awarded the escrowed funds.

Because of the clear abuse of the bankruptcy process, PNC has filed its motion to dismiss the Michigan Bankruptcy as a bad faith filing, and to bar

NYA from filing any further petitions for relief under the Bankruptcy Code for a period of two years.   [Case No. 21-50040-lsg, ECF No. 30].  A hearing is scheduled before Judge Gretchko on February 17, 2022.

In the schedules filed in each of the California Bankruptcy and in the Michigan Bankruptcy, at the time of filing the petitions, NYA asserted that it had cash on hand of $100.74, hardly indicia of a good faith basis for reorganization.  See, Central District of California,  Case No. 2:21-bk-18018, ECF No. 11 at Schedule A/B ¶3; Eastern District of Michigan Case No. 21-50040-lsg, ECF No. 1 at ¶¶1, 2.

While NYA now professes to be destitute, balance sheets and profit and loss statements filed in both cases reflect that the firm made *distributions*  of <u>$4,579,239.47 in 2019</u> and $<u>4,176,514.84</u> in 2020, the latter having been made after the entry of the Judgment, and the former having been made the *same* year PNC was granted Summary Judgment in this case, and *three years after* this case was filed.  *See,* Central District of California, Case No. 2:21-bk-18018, ECF No. 70-2 at pp. 1, 3; Eastern District of Michigan Case No. 21-50040-lsg, ECF No. 20 at pp. 7-9.

In a desperate attempt to avoid having its California Bankruptcy dismissed, NYA filed several documents which attempted to salvage its improper petition for relief.  Among the filings was a 2018 California S

Corporation Franchise or Income Tax Return.  Central District of California, Case No. 2:21-bk-18018, ECF No. 70-10.  The return reveals the existence of various interests of the law firm in which Yatooma may have interest, which also have been concealed from PNC.  In every sense, Yatooma has been intentionally concealing *various* available means to satisfy the Judgment. Examples include Georgetown Development, L.L.C., formed by Yatooma on December 16, 1998, and still in good standing; and, Concourse Conferences, L.L.C., organized by Yatooma's wife, Nicole, on September 18, 2018 (for which the resident agent was changed on October 26, 2021 to Christine L. Constantino,  the other attorney employed by NYA *and* The Yatooma Law Firm, who signed the petitions for relief in both the California Bankruptcy and Michigan Bankruptcy, and for which the registered address was changed to 45 Speed Way, Pontiac, Michigan, one of the addresses used by NYA).  45 Speed Way is also an address at M1 Concourse, the car condominiums and race track established in Pontiac a few years ago.

While this all is enough to grant the relief requested, there is more that PNC has been able to assemble despite Yatooma's attempts to conceal relevant information.

### F.  Yatooma Continues to Pay Real Estate Taxes Despite Claiming No Ability to Satisfy the Judgment.

Yatooma's listed residence is 1450 W. Square Lake Road, Bloomfield Township, Michigan, a four bedroom, five and one-half bath, 5,443 square foot home on 1.687 acres, according to the Township Treasurer's website.  The assessed value of the property is $621,220.  Summer, 2021 taxes of $10,142.87 were paid on September 10, 2021, and Winter, 2021 taxes of $9,756.81 were paid on December 28, 2021, three days before the Michigan Bankruptcy was filed for NYA.  **Exhibit L**.  The fact that the substantial taxes are kept current would tend to indicate that funds for satisfaction of the Judgment are available.

### G.  Yatooma Runs Two Entities That He Claims Are Charities for More than 50 Hours Each Week, and Also Conceals that Income.

Yatooma also serves as the president of Yatooma's Foundation for the Kids, a 501(c)(3) organization.  According to the Foundation's 2019 Internal Revenue Service Form 990 (the most recent year readily available), Yatooma worked on average, fifteen hours per week, and received no compensation for his services.  **Exhibit M**.

In addition, Yatooma is the president and chairman of Charity Motors Inc., like Yatooma's Foundation for the Kids, a 501(c)(3) not for profit entity. According to the 2019 Form 990 for Charity Motors, Yatooma worked on

14

average, forty hours per week; for his services at Charity Motors, he received

W-2/1099-Misc. compensation of <u>$239,000.00 in 2019</u>, the same as he had

received annually <u>beginning in 2016</u>, together with estimated other

compensation of $37,010. **Exhibit N.** Incredibly, these are the exact years in

which this case was pending from Complaint filing to entry of Summary

Judgment. These salaries and other income from $37,010 make up more than

$750,000---and not one penny was delivered to PNC---it was all diverted.

There is no reason to believe that in the past two years Yatooma's

responsibilities or pay with either of these entities has changed, given his

long-standing relationship with each.  And in the last two years as well,

Yatooma has diverted *any and all* income from the use of these charities to pay

*any portion* of the Judgment to PNC.

The fact that Yatooma was able to spend, on average, fifty-five hours per

week working for these non-profit entities is all the more remarkable (or

perhaps more accurately, incredible or unbelievable), as he was also

practicing law for NYA (which paid a $4,579,239.47 distribution in 2019) and

The Yatooma Law Firm, tending to his interests in Cannabis  Property

Brokers, LLC, Value Investors, Georgetown Development, L.L.C., Concourse

Conferences, L.L.C. and surely other unidentified entities in which he

maintains a membership or other ownership interest.

PNC was able to reduce the Judgment balance by approximately $102,000.00 through writs of garnishment, which, not unexpectedly, were challenged by NYA and Yatooma.  See Order Granting in Part and Denying in Part Defendants' Objections to Writs of Garnishment (ECF No. 189).  ECF No. 210.  Those are the only funds received by PNC for application to the debt in nearly twelve years.  That $102,000 was hard fought, required significant fees, and PNC prevailed. It goes to also show, however, that PNC has to expend significant sums despite the final, affirmed, multi-million dollar Judgment, which also includes an attorney fee collection right, all the while Yatooma having had the means to pay the Judgment.

On the whole, Yatooma has distributed to himself and had available more than $9,000,000.00 during the term of this case, which could have been used for satisfaction of the Judgment *more than four times over*.  Making matters worse, the vast majority of these funds were distributed to Yatooma *after* Summary Judgment was granted. Yatooma continues to fight at every turn. The facts show, despite being a practicing attorney, he will do whatever is needed to avoid paying his debt. The law provides for a receiver now.

16

## **Argument**

Fed. R. Civ. P. Rule 66 allows for the appointment of receivers in conformity with traditional rules of equity.  *Liberte Cap. Grp., LLC v Capwill*, 462 F.3d 543, 551 (6th Cir. 2006).  A district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court, with the receiver's role and the court's purpose in the appointment being to safeguard disputed assets, administer the property as suitable, and achieve an equitable distribution.  *Id.*

Because the appointment of a receiver is being sought post-judgment, Fed. R. Civ. P. Rule 69 also applies: "The procedure on execution-and in proceedings supplementary to and in aid of judgment or execution-must accord with the procedure of the state where the court is located..."  Fed. R. Civ. P. 69(a)(1).  Thus, this action is also subject to the provisions of  MCR 2.621(A)(2) and (E), and M.C.L. §600.6104.

MCR 2.621(A)(2) allows a judgment creditor to obtain relief supplementary to judgment under MCL §600.6101-600.6143.  MCR 2.622(E) permits the appointment of a receiver when necessary to protect the rights of a judgment creditor.

MCL §600.6104 reads:

After judgment for money has been rendered in an action in any court of this state, the judge may, on motion in that action or in a subsequent proceeding:

(1) Compel a discovery of any property or things in action belonging to a judgment debtor, and of any property, money, or things in action due to him, or held in trust for him;

(2) Prevent the transfer of any property, money, or things in action, or the payment or delivery thereof to the judgment debtor;

(3) Order the satisfaction of the judgment out of property, money, or other things in action, liquidated or unliquidated, not exempt from execution;

(4) Appoint a receiver of any property the judgment debtor has or may thereafter acquire; and

(5) Make any order as within his discretion seems appropriate in regard to carrying out the full intent and purpose of these provisions to subject any nonexempt assets of any judgment debtor to the satisfaction of any judgment against the judgment debtor.

The court may permit the proceedings under this chapter to be taken although execution may not issue and other proceedings may not be taken for the enforcement of the judgment. It is not necessary that execution be returned unsatisfied before proceedings under this chapter are commenced.

"[T]he form and quantum of evidence required on a motion requesting the appointment of a receiver is a matter of judicial discretion." *Santibanez v Wier McMahon & Co.*, 105 F.3d 234, 241 (5th Cir. 1997) (citation omitted). The *Santibanez* court, in which decision the Fifth Circuit Court of Appeals affirmed the District Court's post-judgment appointment of a receiver to take

possession and sell the debtor's non-exempt assets, after ordering that all assets be described, valued and classified as exempt or nonexempt, provides a road map for what relief is needed here, given the same sort of conduct.

Courts have held that receivers may be appointed "to preserve property pending final determination of its distribution in supplementary proceedings in aid of execution." 7 James Moore et al., Moore's Federal Practice (2d ed. 1996) ¶ 66.05[1] (citing *Haase v. Chapman,* 308 F.Supp. 399 (W.D.Mo. 1969)).

In addition, "receivership may be an appropriate remedy for a judgment creditor who seeks to set aside allegedly fraudulent conveyances by the judgment debtor, or who has had execution issued and returned unsatisfied, or who proceeds through supplementary proceedings pursuant to Rule 69, or who seeks to subject equitable assets to the payment of his judgment, or who otherwise is attempting to have the debtor's property preserved from dissipation until his claim can be satisfied." 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2983 (1973) (citing *Pusey & Jones Co. v. Hanssen,* 261 U.S. 491, 43 S.Ct. 454, 67 L.Ed. 763 (1923))(footnotes and citations omitted).

"Factors that courts have considered as indicating the need for a receivership include the following: 'a valid claim by the party seeking the

appointment; the probability that fraudulent conduct has occurred or will

occur to frustrate that claim; imminent danger that property will be

concealed, lost, or diminished in value; inadequacy of legal remedies; lack of

a less drastic equitable remedy; and likelihood that appointing the receiver

will do more good than harm.'"  *Santibanez* 105 F.3d 234, 242, citing *Aviation*

*Supply Corp. v. R.S.B.I. Aerospace, Inc.,* 999 F.2d 314, 316-17 (8th Cir. 1993).

*See also, Meyer Jewelry Co. v. Meyer Holdings, Inc.,* 906 F.Supp. 428, 432

(E.D.Mich.1995) (holding same).

Here, PNC has made a thorough case for the appointment of a receiver

for Yatooma and his assets, both known and unknown.  Yatooma has

distributed millions to himself (enough to pay the Judgment in full several

times over). Yet, he thwarts PNC at every turn. PNC has to make repeat

filings in this Court simply to collect what is clearly eligible for execution,

such as proved by Magistrate Grand's decision. In *Santibanez,* a receiver was

appointed to locate assets of the judgment debtor who also took action to

avoid a judgment creditor for a judgment in the amount of only $618,881.36,

compared to the $2 Million plus Judgment here. *Santibanez* at 237. Like in

*Santibanez*, here Yatooma also uses closely held entities he owns or controls

to manipulate against PNC collecting *Id.* at 240. The *Santibanez* Court

identified a number of other cases where a receiver was appointed for a

20

judgment debtor for failing to disclose assets and volunteer information pertaining to available assets. *Id.* at 241. Here Yatooma has done far worse as illustrated above.

This is exactly the situation for which post-judgment receivers are necessary and appropriate. "It is well settled that proof of fraud is not required to support a district court's discretionary decision to appoint a receiver." *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 317 (8th Cir. 1993). *See Citronelle–Mobile Gathering, Inc. v. Watkins,* 934 F.2d 1180, 1184 (11th Cir.1991) (transfers to related entities and funneling money out of the country); *Chase Manhattan Bank v. Turabo Shopping Ctr., Inc.,* 683 F.2d 25, 26–27 (1st Cir.1982) ("evidence [of] unfair and arguably fraudulent dealing"); *New York Life,* 755 F.Supp. at 292–93 (diversion of assets to pay unrelated obligations).

Due to the second bad faith filing of a petition for relief under the Bankruptcy Code, until such time as the automatic stay is no longer in effect, PNC is limited to attachment of Yatooma's individual property from which to satisfy the Judgment. As detailed above, Yatooma has gone to extraordinary lengths to avoid paying PNC. Based on all of this conduct and the available law, a receiver should be appointed so that PNC can finally have its significant Judgment satisfied. The goal of Michigan contract law is

to put a party "in as good a position as if the contract had been fully performed." *Corl v. Huron Castings, Inc.*, 450 Mich. 620, 625, 544 N.W.2d 278 (1996).

In this instance, in order to discover, preserve, and ultimately liquidate any nonexempt property available for the satisfaction of the Judgment, with powers similar to those outlined in the *Santibanez* case, PNC believes it appropriate that Charles Bullock, Esq. be appointed to serve as receiver.  Further, the receiver should have the authority to pursue any fraudulent conveyance claims, as appropriate.  Bullock has the necessary and appropriate experience in serving in that capacity for several Michigan state courts and within this district.  A copy of the *curriculum vitae* of his is attached as **Exhibit O**.

## Conclusion and Relief Requested

PNC has made a clear showing that Yatooma has no intention of ever paying the Judgment, and that he will do virtually anything to avoid having to do so.  It is also clear that less drastic measures which do not require this Court's intervention are and would be futile, and that absent relief being afforded, assets available for the satisfaction of the Judgment will be dissipated, concealed, or otherwise disposed of, as in the case of nearly $10

Million or more that already passed through Yatooma's hands while this case has been pending.

As a result, in accordance with the provisions of Fed. R. Civ. P. 66  and 69(a)(1), MCR 2.621(A)(2) and (E), and M.C.L. §600.4031, the appointment of a receiver for all assets and interests of Yatooma personally, with the necessary power to discover, preserve and liquidate same, for the purpose of satisfying the Judgment is necessary and appropriate for the reasons set forth above.

WHEREFORE, PNC requests the Court enter an Order Appointing Receiver in substantially the form of the proposed Order attached as **Exhibit P**.

Plunkett Cooney

By:  /s/DOUGLAS C. BERNSTEIN
Douglas C. Bernstein (P33833)
Patrick Lannen (P73031)
Attorneys for Plaintiff
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
(248) 901-4000
dbernstein@plunkettcooney.com
plannen@plunkettcooney.com

Dated:  February 11, 2022

## PROOF OF SERVICE

      I, Douglas C. Bernstein, hereby certify that on February 11, 2022, a copy of this Motion and Brief were filed electronically. Notice of this filing will be sent to all parties who have appeared by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. Any party, that has not so appeared, has been sent a copy via regular mail.

By: /s/DOUGLAS C. BERNSTEIN
Douglas C. Bernstein (P33833)
Patrick Lannen (P73031)
Attorneys for Plaintiff
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
(248) 901-4000
dbernstein@plunkettcooney.com
plannen@plunkettcooney.com

Dated: February 11, 2022
Open.03654.01119.28161405-1

24