UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PNC BANK, National Association,
successor by merger to National City
Bank,

        Plaintiff,

v.                                            Civil Case No. 16-13258
                                             Honorable Linda V. Parker

LEGAL ADVOCACY, P.C., f/k/a
NORMAN YATOOMA &
ASSOCIATES, P.C. and NORMAN
YATOOMA,

        Defendants.
_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR APPOINTMENT OF RECEIVER (ECF NO 218)

On September 9, 2016, Plaintiff PNC Bank, National Association ("PNC") commenced this lawsuit alleging a breach of a promissory note and breach of the guaranty against Defendant Legal Advocacy, P.C., f/k/a Norman Yatooma & Associates, P.C. ("NYA") and Defendant Norman A. Yatooma (collectively "Defendants"). (ECF No. 1.) Both documents were acknowledged and signed by PNC's predecessor, National City Bank, in 2008. On February 11, 2020, this Court entered a Judgment in favor of Plaintiff against Defendants, jointly and severally, in the amount of $2,141,524.68. (ECF No. 86.)

The matter is presently before the Court on Plaintiff's motion for appointment of a receiver pursuant to Federal Rules of Civil Procedure 66, 69(a)(1), Michigan Court Rule 2.621(A)(2), and Michigan Complied Laws § 660.4031. (ECF No. 218.) Plaintiff asks the Court to appoint a receiver to "discover[], preserv[e] and liquidat[e] the nonexempt assets of Yatooma to satisfy its Judgment . . . ." (*Id.* at Pg ID 2098.) Specifically, Plaintiff argues that "the appointment of a receiver is necessary and warranted under the law because of Yatooma's actions orchestrated to avoid payment." (*Id.*) The parties have fully briefed the motion. (ECF Nos. 219, 221.) For the reasons that follow, the Court is granting Plaintiff's motion.

## I. Procedural Background

The Defendants' last *voluntary* payment on the balance in question occurred in 2010. On September 9, 2016, Plaintiff filed this collection action. (ECF No. 1.) In an Opinion and Order entered on September 30, 2019, this Court granted Plaintiff's Motion for Summary Judgment. (ECF No. 74.) Defendants filed a Motion for Reconsideration (ECF No. 75), which the Court denied in an Opinion and Order entered on October 23, 2019 (ECF No. 80). In its Opinion and Order, the Court ordered the submission of documentation setting forth and supporting Plaintiff's request for reasonable attorneys' fees and costs. (*Id.* at Pg. ID 1351.) The Court permitted Defendants to file a response. (*Id.* at Pg. ID 1351-52.) After

that, the Court ordered a money judgment in favor of Plaintiff against Defendants, who were to be jointly and severally liable for $2,141,524.68, comprised of the principal in the amount of $1,499,276.36, accrued but unpaid interest in the amount of $445,961.83, a late charge of $21,993.05, reasonable attorneys' fees of $165,450.50, non-attorney fees of $1,539.00, and other expenses of $7,117.98. (ECF No. 86 at Pg ID 1570-71.)

Defendants appealed this order, and the Sixth Circuit affirmed this Court's judgment and entered its opinion on December 16, 2020. (ECF No. 211.) The Sixth Circuit issued the mandate on January 7, 2021. (ECF No. 212.) On October 4, 2021, Plaintiff filed a "Motion to Compel Creditor's Examinations of [NYA] and [Yatooma]" (ECF No. 213.), which Defendants responded to (ECF No. 214). However, the next day, NYA filed a "Notice of Automatic Stay [] By Virtue of [their] Bankruptcy Filing." (ECF No. 215.)

Plaintiff filed a reply on the same date requesting an Order compelling Yatooma individually to appear for a creditor's examination at a date and time mutually agreeable to the parties. (ECF No. 216 at Pg ID 2088.) The Court found that Plaintiff was entitled to the relief it sought pursuant to Federal Rule of Civil Procedure 69(a)(2) and Mich. Comp. Laws § 600.6104. (ECF No. 217 at Pg ID 2092.) On October 25, 2021, the Court granted Plaintiff's motion and ordered

3

Yatooma to appear for the creditor's examination within thirty (30) days of its Opinion and Order. (*Id.*)

However, because Plaintiff had trouble obtaining its remedy, on February 11, 2022, it filed the motion before the Court. Plaintiff, through its motion, seeks to have the Court appoint a receiver to facilitate the collection of the assets of the judgment debtor toward the debt owed. The parties dispute the facts related to the motion. Additionally, the Defendants seek to have the Court enforce a payment plan with an end satisfaction year of 2040. However, pursuant to the following analyses, the Court will grant Plaintiff's motion and deny Defendants' proposed payment plan.

## II. Legal Standard

Rule 69 of the Federal Rules of Civil Procedure requires this Court to use Michigan's procedures for ensuring the execution of its judgments. Fed. R. Civ. P. 69(a)(1). Under Michigan law, courts have "broad jurisdiction to appoint a receiver in an appropriate case." *Reed v. Reed*, 693 N.W.2d 825, 844 (Mich. Ct. App. 2005) (citations omitted). "The purpose of appointing a receiver is to preserve property and to dispose of it under the order of the court." *Id.* (citing *Cohen v. Cohen,* 335 N.W.2d 661 (1983 Mich. App.)). Notably however, "a receiver should only be appointed in extreme cases." *Id.* (citing *Petitpren v. Taylor Sch. Dist.*, 304 N.W.2d 553, 558 (Mich. App. 1981)). Indeed, "the appointment of

a receiver is a remedy of last resort and should not be used when another, less dramatic remedy exists." *Woodward v. Schwartz*, 2020 WL 1228657, at *2 (Mich. Ct. App. Mar. 12, 2020) (citation omitted). "When other approaches have failed to bring about compliance with a court's orders, whether through intransigence or incompetence, receivership may then be appropriate." *Petitpren*, 304 N.W.2d at 558.

Michigan law grants a court broad authority to issue orders necessary for the enforcement of its judgments:

> After judgment for money has been rendered in an action in any court of this state, the judge may, on motion in that action or in a subsequent proceeding:
>
> (1) Compel a discovery of any property or things in action belonging to a judgment debtor, and of any property, money, or things in action due to him, or held in trust for him;
>
> (2) Prevent the transfer of any property, money, or things in action, or the payment or delivery thereof to the judgment debtor;
>
> (3) Order the satisfaction of the judgment out of property, money, or other things in action, liquidated or unliquidated, not exempt from execution;
>
> (4) *Appoint a receiver of any property the judgment debtor has or may thereafter acquire; and*
>
> (5) Make any order as within his discretion seems appropriate in regard to carrying out the full intent and purpose of these provisions to subject any nonexempt assets of any judgment debtor to the satisfaction of any judgment against the judgment debtor.

5

> The court may permit the proceedings under this chapter to be taken although execution may not issue and other proceedings may not be taken for the enforcement of the judgment. It is not necessary that execution be returned unsatisfied before proceedings under this chapter are commenced.

Mich. Comp. Laws § 600.6104 (emphasis added).

"The form and quantum of evidence required on a motion requesting the appointment of a receiver is a matter of judicial discretion." *PNC Bank v. Mktg. Goldmines Consulting LLC*, 2021 WL 21762 (E.D. Mich. Jan. 4, 2021) (citing *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 241 (5th Cir. 1997)). In arguing for the need for a receivership, Plaintiff cites *Santibanez* for factors that courts consider in its decision. (ECF No. 218 at Pg ID 2116-17.) *Santibanez* factors include: (1) "a valid claim by the party seeking the appointment"; (2) "the probability that fraudulent conduct has occurred or will occur to frustrate that claim"; (3) "imminent danger that property will be concealed, lost, or diminished in value; inadequacy of legal remedies"; (4) "lack of a less drastic equitable remedy"; and (5) "likelihood that appointing the receiver will do more good than harm." *Santibanez*, 105 F.3d at 242 (citing *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316-17 (8th Cir. 1993)); *see also Meyer Jewelry Co. v. Meyer Holdings, Inc.*, 906 F. Supp. 428, 432 (E.D. Mich. 1995) (holding same).

However, in a more recent case from this district, the court relied on a broader set of factors, including:

> (1) the adequacy of the security; (2) the financial position of the borrower; (3) any fraudulent conduct on the [d]efendant's part; (4) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (5) inadequacy of legal remedies; (6) the probability that harm to the plaintiff by denial of appointment would outweigh injury to parties opposing appointment; (7) the plaintiff's probable success in the action and the possibility of irreparable injury to the plaintiff's interest in the property; and (8) whether the plaintiff's interests sought to be protected will in fact be well-served by a receivership.

*PNC Bank v. Goyette Mech. Co.*, 15 F. Supp. 3d 754, 758 (E.D. Mich. 2014) (citing *Fed. Nat'l Mortg. Ass'n v. Mapletree Inv. Ltd., P'ship*, 2010 WL 1753112, at *3 (E.D. Mich. Apr. 30, 2010)).

Both lists of factors overlap. As such, the Court will aggregate the factors in the lists in its consideration of whether to appoint a receiver. However, the Court should note that not all factors within the lists must be evaluated for the Court to reach its decision. *See Fed. Nat'l Mortg. Ass'n v*, 2010 WL 1753112 at *4 ("Considering the relevant factors . . . ."). "In addition to the consent of the parties, federal courts contemplating the appointment of a receiver . . . have found the adequacy of the security and the financial position of the borrower to be the most important ones." *Id*. at *3. Plaintiff neither alleges there is an agreement that allows appointment of a receiver as a matter of right nor otherwise argues that

7

there is consent present. *But cf. The Huntington Nat'l Bank v. Sakthi Auto. Grp. USA, Inc.*, No. 2:19-cv-10890, 2019 WL 13198714, at *3 (E.D. Mich. May 16, 2019) ("The contract's unambiguous terms therefore entitle [plaintiff] to appointment of a receiver."). Accordingly, the Court will address the factors taking into special account the adequacy of the security and the financial position of Defendants.

### III. Party Arguments

Plaintiff argues the *Santibanez* factors support granting this motion to appoint a receiver. (ECF No. 218 at Pg ID 2117-19.) Plaintiff shares with the Court several salacious factual allegations to support this assertion. The Court need not weight the veracity of each allegation but will consider these allegations along with Defendants' failure to address each of them.

First, PNC draws attention to Yatooma's incorporation of a "Yatooma Law Firm" immediately after summary judgment. The newly incorporated firm employs the same attorneys and operates out of the same address. (ECF No. 218 at Pg. ID 2101-02.) Further, Plaintiff presents the Court with documents showing Yatooma has confirmed his role as the new firm's sole shareholder, president, secretary, and treasurer. (ECF Nos. 218-3, 218-4, 218-5.) Plaintiff alleges that Yatooma has lawyers and clients move interchangeably between the two firms, hinting that this practice reflects financial impropriety. (ECF No. 218 at Pg ID

2102.)  The Yatooma Law Firm even secured a judgment for $238,787.04.  (*Id*. at Pg ID 2103.)  According to Plaintiff those proceeds should have been routed to it to satisfy the outstanding balance.  Plaintiff believes that the creation of this new firm is a deliberate act to withhold money pursuant to the judgment.

Defendants deny Plaintiff's allegations that Yatooma was moving money around to avoid paying the outstanding balance.  Building on this response, Defendants also deny that the new law firm was formed to avoid payment.  The responsive pleadings state that Yatooma is not the owner of the new firm and that it was only created to support a "young entrepreneur."  (ECF No. 219 at Pg ID 2449.)

Next, Plaintiff states that Yatooma's brother has asserted that Yatooma invested in the cannabis industry to avoid the judgment.  (*Id*. at Pg ID 2013-05.)  Yatooma's firm represented an investment firm that sued his brother because of a dispute arising from their investment.  The brothers formed Cannabis Property Brokers, LLC on January 29, 2019, to enter this industry and raised $6,000,000 with the help of the investment firm.  Yatooma's brother settled the dispute for $6,142,196.46.  In a complaint filed in the Oakland County Circuit Court of Michigan, Yatooma's brother alleges that Yatooma's actions and inactions were taken to avoid the multi-million-dollar judgment owed to Plaintiff.  (ECF No. 218-9 at Pg ID 2259.)  To further add to the suspicious list of behaviors, Yatooma

himself was a member of the investing firm within the dispute. (ECF No. 218 at Pg ID 2105.)

Defendants directly address this factual assertion. Defendants rationalize the investment because of the opportunity to capitalize on a growing industry. Defendants state that Yatooma was free to make his investments because they occurred prejudgment and that such an investment would enable him to pay the judgment. (ECF No. 219 at Pg ID 2446.)

Plaintiff argues that Yatooma put NYA into Chapter 11 bankruptcy in California, which Plaintiff believes was done to avoid its intercepting the approximate $400,000 from Oakland County Circuit Court to which it is allegedly entitled to as an intervening plaintiff in a collection action. (*Id*. at Pg ID 2105-06.) Plaintiff believes that Yatooma falsely claimed that NYA's principal place of business was California despite its corporate filings with Michigan agencies stating the contrary. (*Id.* at Pg. ID 2106.) Further, Plaintiff points out that none of NYA's attorneys were licensed in California. The Central District Court of California stated that NYA had filed its case correctly, but the California Bankruptcy case was dismissed after 52 days. Plaintiff claims that Yatooma put NYA into a Second Chapter 11 in Michigan to try again to avoid satisfying the outstanding balance. When Yatooma filed the second bankruptcy, he indicated that NYA's domicile, principal place of business, or main assets were in Michigan. PNC believes that

10

the filings of both Chapter 11 petitions are incompatible because they are irreconcilable. Further, regarding the bankruptcy proceedings, NYA professes that it is destitute of funds.

Defendants counter that Plaintiff "indicated it would only consider further settlement discussions if Defendants 'agreed to dismiss the bankruptcy case, release all funds currently escrowed in the Oakland County Circuit Court, and that [] Yatooma sit for a creditors' exam." (ECF No. 219 at Pg ID 2452.) Defendants allege they have honored this agreement. (*Id*.) Plaintiff explains that Defendants fail to report to this Court that the United States Bankruptcy Court in the Eastern District of Michigan dismissed the second bankruptcy filing, finding it was filed in "bad faith," and barring NYA from filing bankruptcy for two years. (ECF No. 221 at Pg ID 2498.)

Next, Plaintiff seeks to draw the Court's attention to Yatooma's spending of more than 50 hours each week on charity work and his compensation for such work. (ECF No. 218 at Pg ID 2111-13.) Such hours dedicated to this charity work are in addition to his work at his firm and Yatooma earned significant money from each. Between 2016 to 2019, Plaintiff alleges that between the charity income, his income from his law firm, and other sources of income, Yatooma has distributed to himself more than $9,000,000. (*Id*. at Pg ID 2113.) As Plaintiff argues this is enough to satisfy the judgment four times over. (*Id*.) Plaintiff believes that these

11

charity efforts are a ploy to conceal income. Defendants' response dismisses any impropriety regarding Yatooma's charitable work, stating that "[a]ny compensation Mr. Yatooma receives has been vetted through third parties led by [an accounting firm]." (ECF No. 219 at Pg ID 2450.)

The parties dispute whether they could have conducted a creditors examination despite the Court's Order directing them to do so. (*See* ECF No. 217.) Relatedly, Defendants contend that it relied on the settlement discussion between parties including an agreement to sit for a creditor's examination. Defendants allege that the settlement discussion culminated in a stipulation of counsel in exchange for dismissing the bankruptcy case in Michigan. As part of this alleged stipulation, Defendants state that the parties agreed "[Plaintiff] would receive the $400,000.00 being held in escrow in the Oakland County Circuit Court in further satisfaction of the Judgment and []Yatooma shall sit for a creditor's examination even though [Plaintiff] failed to take the examination in contravention of this Court's Order and has questioned Yatooma for hours in *two* distinct 341 hearings." (ECF No. 219 at Pg ID 2443 (emphasis in original).) Defendants believe such use of this settlement information was improper because Plaintiff induced the stipulation, Defendants performed in reliance of the stipulation, and Plaintiff went forward and filed the instant motion in bad faith to the stipulation. (*Id*. at Pg ID

12

2444.) Plaintiff attaches emails showing that no such agreement was reached. (*See* ECF No. 221-5.)

In general, as a response to Plaintiff's assertions, Defendants argue that Plaintiff fails to meet the threshold for showing that a receiver is necessary because the case before the Court must be "extreme," and other remedies fail to bring about compliance. (ECF No. 219 at Pg ID 2454 (citing *Petitpren*, 304 N.W.2d at 558).) Defendants do not address the factors arguing instead that "the *Santibanez* case has no application here." (*Id*. at Pg ID 2454.) Defendants claim that they have proffered over $500,000 of the judgment, negating a designation of this case as "extreme."[1] (*Id.* at Pg. ID 2442.)

Finally, Defendants propose an installment plan to pay back the remaining balance. The plan seeks to have the balance repaid on or before 2040. (ECF No. 219 at Pg. ID 2458.) In reply, Plaintiff addresses several of Defendants' contentions. (ECF No. 221.) First, Plaintiff rebuts Defendants' assertion that the new firm was not formed to support a "young entrepreneur" by showing that Yatooma is the sole owner of the firm as demonstrated in a personally signed

---

[1] Defendants do not support this assertion with any evidence. Assuming the $500,000 amount includes the $400,000 allegedly being held in escrow in the Oakland County Circuit Court of Michigan, (*see* ECF No. 219 at Pg ID 2456), the Defendants do not provide any proof of payment or proof of an agreement or stipulation between the parties requiring that Defendants pay Plaintiff. As stated, Plaintiff, as well as Defendants, attach emails showing that an agreement was not reached. (ECF No. 219-1; ECF No. 221-5.)

13

Application for Lawyers Professional Liability Insurance and that the staff of the new firm is the same as the old firm. (ECF No. 221 at Pg. ID 2497.) Plaintiff also correctly identifies that Defendants fail to address several critical contentions at the center of its motions. Defendants fail to respond to Plaintiff's proofs that the new firm is located at the same address, employs the same attorneys, and features the same website content as the old firm and that the firms work interchangeably as co-counsel on matters. Defendants fail to respond to the concerns of the Chapter 11 filings and alleged misrepresentations made under oath. Defendants fail to respond to the fact that "Yatooma paid himself from "Charity" Motors more than $750,000 from 2016 through 2019 while this case was pending, plus more than $8 million more from his law firm after this case was filed." (*Id.* at Pg. ID 2498.)

Plaintiff dismisses Defendants' attempts to enforce a payment plan. Plaintiff challenges Defendants' claims regarding the creditor's exam through its statements that Yatooma failed to ever appear for such an exam at any date and time requested. Most importantly, Plaintiff also claims that neither Yatooma nor NYA has ever paid anything to satisfy the judgment, nor have they paid anything voluntarily over the 11 years that the debt existed. The only recovery Plaintiff could garner was $102,000 through a writ of garnishment, which required significant effort and resources. (*Id*. at Pg ID 2499.) Plaintiff also denies the existence of the raised stipulation. (*Id.* at Pg. ID 2502.)

14

## IV. Analysis

Plaintiff alleges conduct prejudgment as well as post judgement. The Court will only look at Yatooma's post judgment conduct. Defendants do not address the factors arguing instead that "the *Santibanez* case has no application here."[2] (ECF No. 219 at Pg ID 2454.) However, the Court finds that the *Santibanez* factors and expanded factors *supra* are highly relevant here.

First, the Court finds that Plaintiff has asserted a valid claim in seeking the appointment. The facts pleaded by Plaintiff explain that Defendants have not voluntarily paid any amount towards the judgment and demonstrate a pattern of behavior supporting a finding that this claim is valid. Defendants conduct, when aggregated, including creating a new firm, incompatible bankruptcy filings, and excessive charity work reimbursement, establishes the validity of the present motion. Further, Plaintiff has a high likelihood of success on the merits of this case because this is a collection of a judgment which has been affirmed by the Sixth Circuit, where Plaintiff's entitlement to relief is not at all in doubt. *PNC Bank*, 2021 WL 21762, at *3 (citations omitted).

---

[2] As the Sixth Circuit has repeatedly explained, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001) (quoting *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999)); *Slater v. Potter*, 28 F. App'x 512, 513 (6th Cir. 2002) (citing *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)). As such, Defendants waive analysis of the relevant factors.

Next the Court evaluates the adequacy or inadequacy of legal remedies and whether there is a lack of a less drastic equitable remedy. For this factor, the Court considers additional legal and equitable remedies. The parties dispute whether good faith efforts were made to conduct a creditors' exam as ordered by this Court. However, the Court finds, taking into account Defendants' history of acts or omissions, that Plaintiff's statements that Defendants failed to enable such an exam to occur are more credible. Thus, it is more likely that Defendants failed to give a good faith effort to participate in the exam than their allegations that Plaintiff is at fault for the failure of the exam to occur.

Regarding Defendants' proposed payment plan, Plaintiff seeks to invalidate such a proposal. (ECF No. 221 at Pg. ID 2504.) First, Plaintiff states that Mich. Comp. Laws § 600.6201, which governs installment plans, applies only to individuals and not entities. However, Plaintiff is seeking to collect a judgment, owned jointly and severally from Defendants, from an individual, Yatooma. Plaintiff, however, correctly points out that they are not precluded from taking legal action to pursue the money owed, even if this Court accepted the payment plan. *See* M.C.L. § 600.6245. This includes appointing a receiver. Finally, Plaintiff states that a payment plan cannot be administered later than the time of judgment under Mich. Comp. Laws § 600.6201. However, such a statement would be valid if the court only looked at § 600.6201(1) rather than § 600.6201(2).

16

Nevertheless, even if this Court has the discretion to administer the payment plan, a plan to offer a structured pace of payments will not ease the Court's concern that Defendants will continue to engage in inappropriate behavior. This is further buttressed by the fact that Yatooma has not tendered any voluntary payments since judgment was entered.

Regarding the likelihood that appointing the receiver will do more good than harm, the Court finds that Defendants have not argued that any harm will be suffered by appointment. On the other hand, enough harm has already been done to Plaintiff and, perhaps, the legal system with the gamesmanship of Defendants. As such, the Court finds that this factor supports receivership.

Regarding the adequacy of the security, Defendants' debt owed to Plaintiff still amounts to a balance of over $2,000,000. The loan that led to this dispute was taken out eleven years ago, this Court's judgment was entered two years ago, and the Sixth Circuit affirmed it a few months later. NYA has filed for bankruptcy on two occasions and represented that it was destitute. Regarding the financial position of the borrower Courts have found that this factor favors appointment of a receiver where the judgment debtor's financial position is poor. See *PNC Bank*, 15 F. Supp. 3d at 759 ("[Plaintiff] anticipates the borrowers' financial position to continue to deteriorate."). Considering all the allegations, and Defendants' failure to rebut them or allege harm, the Court finds that this factor supports receivership.

Regarding, the probability that fraudulent conduct has occurred or will occur to frustrate that claim, Plaintiff argues that this factor weighs heavily in consideration of receivership. Defendants fail to deny key assertions against them, including suspicions regarding the new firm, the bankruptcy filings, and the charity pay. (*See* ECF No. 221 at Pg. ID 2497-2498.) However, the Court need not weight the veracity of the fraud allegations. "It is well settled that proof of fraud is not required to support a district court's discretionary decision to appoint a receiver." *Aviation Supply Corp.*, 999 F.2d at 317. Further, rather than provide the Court with any reasoned defense regarding Plaintiff's allegations, Defendants use argumentative and conclusory language without any support. (*See e.g.*, ECF No. 219 at Pg ID 2449 ("the Yatooma Law Firm is not owned by [] Yatooma and was formed as the business venture with his colleague, utilizing [] Yatooma's name and acumen to facilitate a new law practice for a young entrepreneur").)

Lastly, the Court finds that Plaintiff's interests sought to be protected will be well-served by a receivership. Plaintiff wants Defendants to pay the balance of judgment. Appointing a receiver will expedite collection, which has caused Plaintiff to expend significant resources and effort to get any payment. (*See* ECF No. 221 at Pg ID 2499-50 (Plaintiff explaining that "collection has come at a considerable cost of attorney's fees and expenses (well over $100,000) . . .").) A

receiver will assist the Court in determining the borrower's financial position and facilitating payment of the judgment.

## V. Conclusion

In using the above factors to weigh and decide whether to grant such a motion, the Court finds that the weight is skewed in favor of Plaintiff. For the reasons set forth above, the Court grants Plaintiff's motion to appoint a receiver (ECF No. 218).

Accordingly,

**IT IS ORDERED** that Plaintiff's motion (ECF No. 218) is **GRANTED**.

**IT IS FURTHER ORDERED** that Charles D. Bullock is appointed as receiver to be governed by the appointment order to be entered separately.

**IT IS SO ORDERED.**

s/ Linda V. Parker<br>
LINDA V. PARKER<br>
U.S. DISTRICT JUDGE

Dated: September 7, 2022